United States District Court<br>For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Edward B. Foster, | NO. C 03-02644 JW |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Metropolitan Life Insurance Company, | |
| Defendant. | |

## I. INTRODUCTION

Edward B. Foster ("Foster" or "Plaintiff") initiated this suit against Metropolitan Life Insurance Company ("MetLife") after Plaintiff's life insurance policy "lapsed" due to non-payment of premiums. Plaintiff contends that MetLife breached his life insurance policy by failing to provide the requisite pre-cancellation notices.

Presently before this Court is MetLife's Motion for Summary Judgment. MetLife contends that Foster's claim fails as a matter of law because (1) Foster's claim is barred by the doctrine of laches; (2) MetLife sent the requisite notices; (3) Foster's policy lapsed due to non-payment of premiums; and (4) MetLife did not waive its right to lapse and terminate Foster's policy. The motion was heard of October 17, 2005. Based upon all papers filed to date and the comments of counsel, the Court GRANTS MetLife's Motion for Summary Judgment.

## II.  BACKGROUND

In 1978, Foster was employed by Stanford Research Institute ("SRI"), and as part of the SRI employment benefits, Foster acquired a Group Life Insurance Policy ("GUL").  The coverage initially issued on November 11, 1989.  At the time, Foster was insured by Travelers.  In 1995 or 1996, MetLife became Foster's insurer.  Marsh@Work Solutions ("Marsh") served as the third-party administrator on Foster's policy.[1]  Marsh administered and processed claims according to MetLife's guidelines and all records maintained by Marsh on behalf of MetLife are the property of MetLife.

On August 16, 1998, Foster retired from SRI and accordingly, his GUL coverage transitioned from payroll deductions to direct-bill status.  At the time, Foster began making quarterly premium payments towards his insurance policy.  On August 23, 1999, Foster made an advance payment of $1,144.86, to cover the months of August, September and October, 1999.  Thereafter, Foster made no payments in November or December 1999.  MetLife's insurance certificate contains a "Grace Period" provision, which provides that:

> If you are not paying under the Payroll Deduction Plan and if the Cash Value on any monthly anniversary is less than the Monthly Deduction for that month, there will be a Grace Period of 60 days after the anniversary to pay an amount that will cover the Monthly deduction.  We will send you a notice of the Grace period.  If we do not receive a sufficient amount by the end of the Grace period, this certificate will then end without value.

Plaintiff's Opp'n. at 2.  According to this provision, Foster's 60-day grace period expired on December 31, 1999.  However, MetLife did not cancel Foster's policy at the time.  On January 26, 2000, Foster called Marsh, requesting that MetLife refrain from declaring his policy as "lapsed," and accept a late payment for the period November, December, 1999, and January 2000.  On February 1, 2000, Marsh received a payment for $1,021.91, which was applied towards Foster's premium payments for November and December 1999, and January 2000.  Marsh failed to generate a premium notice or billing notice for the months of January, February and March 2000.  On April 2, 2000, another 60-day grace period lapsed.  Again, MetLife took no action and failed to cancel Foster's policy.

---

[1] Marsh, previously known as Johnson & Higgins/Kirke-Van Orsdel, Inc. (JH), is the successor-in-interest to Johnson & Higgins.

MetLife claims that on April 7, 2000, it mailed to Foster, a Notice of Payment Due for the February, March, April, 2000 premium period and the May, June, July, 2000 premium period. On April 27, 2000, Marsh received a check from Foster in the amount of $1,068.42, which was applied to the February, March, and April 2000 premium period. No other payments were received after April 27, 2000.

On May 5, 2000, Marsh allegedly sent a billing notice to Foster. MetLife claims that it also sent Foster a Notice of Payment Due on May 5, 2000. This notice allegedly informed Foster that his policy would lapse if payment was not received by July 1, 2000. MetLife also claims that it sent another Notice of Payment Due to Foster on June 5, 2000, reminding him that his policy would lapse if no payment was received by July 1, 2000. Foster claims that he never received any of these notices. The Notices of Payments Due were never returned to Marsh or to MetLife. In the absence of any further payments, Marsh sent a letter to Foster on July 9, 2000, stating that Foster's policy had lapsed effective May 1, 2000.

On July 17, 2000, Foster contacted Marsh to inquire as to the status of his policy. During this conversation, Marsh informed him that his policy had lapsed due to non-payment of the premium. Foster claimed that he had mailed a check for the required amount and that he would contact his bank to ascertain if the check was cashed. At this time, Marsh informed Foster that he could either send a copy of the cancelled check to Marsh, or he could reapply for reinstatement of his policy.

For the next two years and eight months, Foster made no contact with Marsh or MetLife. Finally, on March 21, 2003, Foster called Marsh requesting information on reinstatement of his policy. Marsh informed Foster that he had six weeks remaining to complete the necessary forms for reinstatement. Foster, however, chose not to reapply for reinstatement and proceeded to file a complaint against MetLife on April 23, 2003. MetLife removed the action to this Court.

Foster claims that MetLife breached its contractual agreement by terminating his life insurance policy. Presently before this Court is MetLife's motion for summary judgment. MetLife essentially contends that Foster's policy lapsed due to non-payment of premiums, and alternatively, that Foster's

3

action is barred by laches.

## III. STANDARDS

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

A movant for summary judgment always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If the movant does not satisfy this initial burden, the non-movant has no obligation to produce anything and summary judgment must be denied. If, however, the movant meets this initial burden, then the burden shifts to the non-movant to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. In other words, to preclude entry of summary judgment, the non-movant must bring forth genuine issues of material fact. An issue of fact is "genuine" if it can reasonably be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id. In short, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

It is this court's responsibility "to determine whether the 'specific facts' set forth by the non-movant, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. In conducting its analysis, this court must draw all reasonable inferences in favor of the non-movant. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255).

## IV.  DISCUSSION

**I.  Foster's Lawsuit is barred by the Doctrine of Laches**.

MetLife contends that Foster's suit to reinstate his insurance policy is barred by the doctrine of laches. Specifically, MetLife contends that Foster contacted Marsh on July 17, 2000, to inquire as to why his policy lapsed. Thereafter, Foster made no contact with Marsh or MetLife until March 21, 2003, when he called Marsh, requesting information on reinstatement of his policy.

To establish laches, a party must prove the following: (1) full knowledge of all the facts by the claimant, (2) with a concurrent unreasonable delay, (3) resulting in such substantial injury or prejudice to defendant, (4) as to make enforcement of the claim inequitable. Dillingham Corp. v. Employer's Mut. Liability Ins. Co., 503 F.2d 1181 (9th Cir. 1974); Florio v. City of Ontario, 130 Cal. App. 4th 1462, 1468 (Cal.Ct.App. 2005). The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay. Utica Mut. Ins. Co. v. Monarch Ins. Co., 250 Cal. App. 2d 538 (Cal. Ct. App. 1967). Laches is an affirmative defense, the burden of pleading and proving of which rests upon the party asserting it, unless laches is disclosed from the face of the complaint. Id.

MetLife has clearly established the elements of laches based upon the undisputed evidence. It is undisputed that on July 17, 2000, Foster contacted MetLife to inquire about the status of his policy, and learned that MetLife considered his policy to have lapsed due to non-payment of the premium. Despite being "highly motivated to maintain life insurance,[2]" Foster did very little to assert his rights, in apparent acceptance of MetLife's determination to treat the policy as lapsed. On January 9, 2003, he filed a complaint with the California Department of Insurance. The status of this complaint is unknown. On March 21, 2003, Foster he made a telephone call to Marsh. A telephone call, however, is not a forceful assertion of one's rights. After the telephone conversation, Foster again did nothing to seek legal redress until April 23, 2003, when he filed the instant suit against MetLife. In total, Foster waited from July 17, 2000 to April 23, 2003, before bringing his dispute to court. Foster offers various explanations for not

---

[2] Declaration of Plaintiff in Support of Summary Judgment, par. 10.

1  taking legal action, however, none of them justifies a delay of two years and nine months.

2       Moreover, Foster's unreasonable delay has resulted in substantial prejudice against MetLife.
3  Foster's claim rests on his assertion that MetLife failed to provide him with the requisite notices of
4  cancellation in the year 2000.  With the passage of time, MetLife's access to key records and witnesses
5  regarding notices sent to Foster has been diminished.  MetLife is left to rely on exemplar copies of the
6  notices.  Therefore, the Court finds that Foster's suit against MetLife is barred by the doctrine of laches.

7       MetLife is entitled to summary judgment.  The Court's ruling on the doctrine of laches is sufficient
8  to dispose of Foster's entire suit.  Nevertheless, the Court will address the remaining arguments raised in
9  the parties' briefs in the next two sections of this Order.

10 **II.  Irrespective of the doctrine of laches, Foster's breach of contract claim fails.**

11      Irrespective of the doctrine of laches, the Court finds that Foster's breach of contract claim fails as
12 a matter of law.  As a preliminary matter, it is significant that MetLife did not "cancel" Foster's policy.
13 Rather, the policy lapsed due to non-payment of quarterly premiums.  "Lapse" is defined as the termination
14 of a policy's coverage at the end of a policy period, resulting from the insured's failure to pay premiums or
15 otherwise manifest the intent to renew the policy.  Scott v. Federal Life Ins. Co., 200 Cal. App. 2d 384,
16 391-92 (1962).  An express provision of an insurance contract stipulating that a default in payment causes
17 it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are
18 not violated.  Id.

19      Foster's payment history is undisputed.  Starting November of 1999, Foster's payments were late.
20 Indeed, Foster admits that he "often delayed payment until well into the coverage period."  Decl. of Plaintiff
21 in Support of Summary Judgment, par. 8.  The payment for the quarter November 1999 to January 2000
22 was received 25 days after the sixty-day grace period allowed by MetLife.  Similarly, the payment for the
23 quarter February, March, and April 2000 was late.  Foster's last payment was received on April 27, 2000.

24      It is further undisputed that Foster's policy provided that his policy would lapse upon failure to pay
25 premiums. Notwithstanding Foster's failure to make timely payments coupled with MetLife's indisputable
26 right to deem the policy lapsed for failure to pay premiums, Foster contends that MetLife is not entitled to

6

treat his policy as lapsed because he did not receive the requisite notices. Foster asserts emphatically that "[w]hile coverage was in force [he] never received any 60-day grace period notices, nor did [he] receive any notices that [his] coverage would be cancelled." Decl. of Plaintiff in Support of Summary Judgment, par. 18. Foster's declaration constitutes circumstantial evidence that the notices were not mailed.

MetLife, however, has submitted a computer generated log identifying all communications sent to Foster. Further, Ms. Rita Becconsall, an employee at MetLife states in her declaration, that she has personal knowledge of the facts of Foster's case. She testifies that on May 5, 2000, and June 5, 2000, "Notices of Payments Due" were indeed mailed to Foster.

In the Court's view, the conflict in the evidence outlined above is insufficient to defeat MetLife's motion for summary judgment. This is because the conflict in the evidence does not raise a "genuine" issue of material fact. That is, the conflict in evidence cannot "reasonably be resolved in favor of either party." See Anderson, supra. Foster, as the Plaintiff, ultimately has the burden of establishing that MetLife failed to send the requisite notices. There is no conceivable rational basis for any jury to give Foster's declaration any more (or less) credence than MetLife's computer generated log. The end result, therefore, is that Foster can not possibly establish by a preponderance of evidence that MetLife breached his life insurance policy. Therefore, the Court finds that MetLife is entitled to summary judgment on the additional ground that no reasonable jury could find in Foster's favor.

**III. Foster's assertion that MetLife waived its right to terminate Foster's policy due to late payment of premiums is without merit.**

Lastly, Foster attempts to defeat MetLife's summary judgment motion by arguing that MetLife had a "track record" of accepting late payments, and "either through waiver or estoppel suggested Plaintiff could make payment at the end of the May-July 31, 2000 coverage period, to keep his policy in force." Plaintiff's Opposition, p.12.

In general, to prove waiver, there must be: (1) an existing right, (2) knowledge of its existence, (3) an actual intention to relinquish it, or, conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it had been relinquished. Klotz v. Old Line Life Ins. Co. Of Am., 955 F.Supp.

7

1183 (D. Cal. 1996). Whether a waiver has occurred is usually a question of fact, the determination of which, if supported by substantial evidence, will not be disturbed on appeal unless the only inference which can be drawn from the evidence is to the contrary. Id.

Four elements must generally be proved to establish equitable estoppel: (1) the party to be estopped must know the facts, (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended, (3) the party asserting the estoppel must be ignorant of the true state of the facts, and (4) he must rely upon the conduct to his injury. DRG/Beverly Hills, 30 Cal. App. 4th (Cal. Ct. App. 1994). The estoppel issue is a non jury fact question to be determined by the trial court in accordance with applicable law. Id.

"[A] past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time." McCary v. John Hancock Mut. Life Ins. Co., 236 Cal.App.2d 501, 508 (Cal.Ct.App. 1965). In McCary, the insurer accepted six out of twelve premium payments after the expiration of the 31-day grace periods. Id. at 505. In each of the instances, the insurer sent a "late payment offer" to the insured, without availing itself of the right to forfeit the policy or require the insured to make an application for reinstatement. Id. Accordingly, the California Court of Appeal concluded that the evidence was sufficient to support a finding of waiver and estoppel to assert the right to declare a policy lapse based upon the lateness of payment.

Unlike McCary, supra, MetLife accepted late payments from Foster on only two occasions. Moreover, on one of these occasions, MetLife accepted the late payment in January 2000, only after Foster called and requested an extension for payment of the premiums. By accepting just two late payments from Foster, MetLife did not indulge in a pattern of conduct to support a finding of waiver or estoppel.

### V. CONCLUSION

Foster's claim is barred by the doctrine of laches. Further, Foster's claim fails for lack of proof. Lastly, MetLife did not waive, nor is it estopped, from treating Foster's policy as lapsed. Accordingly, this

8

1  Court GRANTS MetLife's Motion for Summary Judgment.

2  Dated: December 7, 2005  /s/James Ware
                            JAMES WARE
3  03cv2644sj               United States District Judge

9

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Ellen B. Kamon ekamon@sortlaw.com
   John A. Shepardson johnshepardson@hotmail.com

4  **Dated: December 7, 2005**                    **Richard W. Wieking, Clerk**

                                                  **By:  /s/JW Chambers**
                                                  **Ronald . Davis**
                                                  **Courtroom Deputy**